Okay, Mr. Backrock. If I mispronounced that, please correct me. That's fine, Your Honor. That was correct. May it please the Court. Good morning. Joshua Backrock. I represent the Defendant Appellant, Reliance Standard Life Insurance Company, and I'd like to reserve five minutes of time for rebuttal. We're appealing from the District Court's grant of summary judgment in favor of the  by this Court in a series of cases. In House v. American United Life Insurance Company, this Court held that a claimant's regular occupation is a general occupation rather than the specific job they perform for their employer. In Pylant v. Hartford, this Court held that the Department of Labor's Dictionary of Occupational Titles, also known as the DOT, is a proper way of determining those material duties. And finally, in Robinson v. Aetna, this Court held that if that DOT is not in the administrative record, it can't be considered because it's factual evidence. The District Court's decision in this case is contrary to each of these decisions and is therefore wrong, and we ask that it be reversed. Interestingly enough, if you look at the complaint filed by the plaintiff in this case, she practically acknowledges that under the terms of this plan, she's not entitled to benefits. Because what does she allege? She alleged that the policy had too restrictive of a definition of total disability to accommodate her situation, her situation being she can't be exposed to cold in her job. But that's no different from the situation that this Court had in the House case. In the House, there was an attorney, and he claimed he was disabled because he was a litigation attorney, and that was a stressful position. And this Court held, no. Your occupation is an attorney. It's broader than a litigation attorney. And there are two significant differences between this case and House, by the way. First is, House was decided under de novo review. In this case, we have discretionary authority. Our interpretation, as long as it's reasonable, has to be followed. And if the interpretation in House was deemed correct under de novo review, it's impossible for that same interpretation to be unreasonable as the District Court held in this case. But we also have a definition in this policy. There was no definition of regular occupation in House, but there is here. And it specifically defines regular occupation as the way that the occupation is performed in the national economy, and it does not look to the unique duties for an employer, a specific employer. So what happened in this case is Reliance has a job description from Pico Foods. It looks it over, and it compares it with the Dictionary of Occupational Titles. And it finds an occupation of sanitarian. And if you look on page 18 of our opening brief, you see that we've laid out a chart. And it, to a T, compares. If you look at what Pico said are the duties that she had to do with them, it compares very favorably with what the sanitarian occupation requires. And again, under PILANT, as long as that's in the administrative record and it's a reasonable one, it cannot be considered an abuse of discretion. So how do we know that this is a reasonable one in this case? It was never rebutted by the plaintiff. This is an ERISA case. She had an appeal right, and she exercised it. And nowhere in her appeal did she submit an alternative DOT and say, nope, you used the wrong one. Nowhere did she submit her own vocational report and say, no, you did an incorrect analysis. So it is unrebutted in the record here, the DOT that was followed by Reliance. So what we have here is, if you compare this situation to House, in House the occupation was an attorney, not a litigation attorney who was exposed to stress. In this case, we have a sanitarian. Not a sanitarian in a chicken processing plant who is exposed to cold. And if you think about it, this makes sense, because sanitarian is involved in all food processing, but not all food processing involves exposure to cold. You take a look at the position of anything in the baking industry. There's no cold involved in those, from what I can tell. So you then have to wonder, how did the district court in this case arrive at the wrong conclusion? And it did so, unfortunately, by disregarding House and other decisions I mentioned and looking at the law and decisions from other circuits. But the problem with that is this. In many of those cases that the district court relied on, there was no definition of regular occupation, which we have here. In many of those cases, they were de novo review, which isn't the case here. But most important, we are not in those other circuits. We are here in the Fifth Circuit. And it is House that this case should have been decided on, but the district court failed to do so. And if you look at the district court's opinion, that's clear, that House was not followed. The district court repeatedly referred to her job in a chicken processing plant anywhere in the United States. That's not her occupation. That's her job. So the district court here also made mistakes because it believed that you had to match up every duty that she performed for her employer with a DOT entry. And there's only one in this administrative record, as I pointed out. So the district court then said, no, I'm going to look at every duty, even though that's contrary to House. And it actually said that this occupation involves three different DOTs. So that tells you something, that clearly the court went overbroad in its analysis of what is a material duty of an occupation. But we also know under Robinson that was wrong. In the Robinson case, the district court relied on a DOT that was not in the administrative record, and the Fifth Circuit said, no, that was erroneous. A DOT is factual evidence. That can't be considered. The district court here considered two different or, I'm sorry, a bunch of different DOTs not in the administrative record, and that under Robinson case is not allowed. Again, it's factual evidence, not in the record in an arrested case. And so on that basis alone, it's clear the district court here erred. Mr. Nichols' brief says that the district court used a judicial notice to identify the additional DOT. Remind me, I don't remember whether the district judge used the term judicial notice or if that's just the plaintiff's supposition as to why the district court referred to an alternate DOT. I don't recall, and counsel, correct me, I don't recall the use. What I do recall of judicial notice, I do recall what the judge said, is the defendant relied on the DOT, therefore it's fair that I do so. But that's not the law. That's not what is said in Robinson. Again, judicial notice doesn't apply to a situation where you have factual evidence like this. I mean, if that was the case in Robinson, there would have been no problem with the district court's reliance on a new DOT. But this court held no, that's impermissible. So if you look at it here, we have a DOT which under Pylant is reasonable to rely on to determine the material duties. They do not include exposure to cold. No evidence was presented by Ms. Nichols during her administrative review to contradict the evidence in this record and the conclusions in this record. So when you look at House, you look at Robinson, you look at Pylant, and the undisputed facts in this case, it's just impossible to conclude that this was an abuse of discretion. So how did the district court come to that conclusion? I think it was tainted by its conflict of interest analysis as well, which is contrary to the law of this circuit. So the court took reliance to task for what it found was a history of misdeeds in deciding cases. And it began by saying that reliance should have introduced evidence of its own on the conflict of interest question to show that it mitigated the conflict. But that's incorrect from the start. It is the plaintiff's burden to show that the conflict influenced the decision. And, in fact, in Holland v. International Paper 576-240, this court held that when there is no evidence of a conflict submitted, like in this case, it is not entitled to significant weight. But in this court, in the district court, it started with a conflict, it ended with a conflict, and in between it was mostly the conflict that the court was talking about. And its analysis in that regard was incorrect. It realized that you cannot look at batting averages, in other words, how many cases the defendant won versus how many lost, as evidence of a conflict. But the court did something even worse in this case. It only looked at those cases in which my client lost. But over a 20-year period, and that's important because over that 20 years, there are some big changes in the law that occurred. For example, Black and Decker v. Nord from the Supreme Court, which held that the treating physician rule applied in Social Security cases does not apply to ERISA cases. And a lot of those cases were decided on that basis. Other cases are clearly contrary to the law of this circuit. In some of the cases, Reliance was criticized for not conducting an in-person examination. But this court has held that there's no duty on the behalf of the plaintiff to do so or conduct any investigation whatsoever. Some of the cases, ironically enough, were based on the vocational issue that was before the court. And the court said we have a history of misdeeds based on decisions that are contrary to this circuit's decision in house. How can it be an abuse of discretion to follow this court's law? So when you look at what the district court did, it had a conflict of interest analysis that was erroneous, and then it tainted the entire decision by the district court. And then you look also at the district court's vocational review, and it is contrary to each and every one of the decisions from this district court, from this appellate court. And I think in just wrapping that part up, it's important to note the court cited some Fifth Circuit cases in which the courts did look at the actual jobs performed by the claimants. But there's a reason. In those cases, there was no DOT in the file in the administrative record. So that was the only evidence available to the court. In none of those cases where there was no DOT, did the district courts then go out there and put one in the record, because under Robinson, that would be improper. I'd like to reserve my remaining time. Thank you, Your Honor. Yes, you've saved time for rebuttal, Mr. Beckrock. Thank you. Mr. Norris. Good morning. I'm Nick Norris, representing Ms. Nichols. First, to address House. House is very different than the current case. In that case, the plaintiff put in his disability application that he was a lawyer. And then after not being able to do his specific job at his specific firm, decided to take another lawyer job and made an application saying that he was disabled and said that, well, his occupation was really a trial attorney. This is nothing similar in this situation. In this particular situation, Ms. Nichols, her application said that she was an HACCP coordinator and they knew she was at a chicken processing plant. The requirements of working in cold at a chicken processing plant doesn't just apply to PICO. It applies to every chicken processing plant across the nation. Maybe the world, but at least the nation, because of the federal rules that require meat to be, chicken meat, to be chilled immediately after processing. The defendant, at one point in his brief, tried to claim that, well, that really only highlights 20% of her time, but in reality it was the opposite. What they ended up shining a light on is that really 80% of her time is working in cold temperatures because 80% is where it's after the processing, after it has to be chilled. They've kind of set aside from that and said, well, we just don't know now. They were very quick to say 20% when they thought, I guess, chickens get processed when they're frozen. I don't know how they ever thought that, but anyway. It's very clear that she spends a good amount of her time in cold environments, which she cannot do. With regard to the DOT definitions, what they use is a definition that is outdated. They use something that hasn't been published since 1999, and there are new ones out, but there's a good reason for that. You can't get them. If you're a single person, especially without a lawyer, you can't go out and get these old DOT laws, these old DOT definitions, and they like that. They like to use these unpublished ones where you can't pull from. They've got the new ones. They're online, but those are different. What they like to do is they know this position is performed nationally. They try to say, well, this is limited to PICO, but they offer no evidence, none, to say that it's limited to PICO. It's not, and no reasonable person could conclude it would, that at other chicken processing plants they never freeze their meat or chill it, even though it's required by federal law. It would make absolutely no sense on there. But that's what they want this court to conclude is that they can use this DOT definition that does not comply with the job that she performed. And certainly we can see that this court holds that you can use DOT definitions, but they have to be reasonable. As the district court found, this job really gets broken down into three categories, and in their situation it only complied with one of them. They mentioned at one point that the fact that the jobs don't particularly line up are not that big of a deal, and that the court should not have been allowed to use the DOT definitions that it found. We honestly don't think the DOT should have been used at all in there. We understand that you can use it in situations where something is not performed in the national economy on there, and I appreciate what the district court did trying to merge definitions because the DOT is vastly outdated. But in this particular case, the job was performed in the national economy, and they could have looked at the job as it was performed in the national economy, which is the definition under the plan, but they refused to. They intentionally jumped to the DOT and jumped to this rehabilitation expert that doesn't talk to the individual, goes off these definitions, and just tries to match it however and whatever it takes to deny the claim on there. And you saw when she appealed, Dr. Xu, I think that's how you pronounce her name, and she said, well, the sanitarian means that you only work in normal working environments. And the Rural Alliance says, oh, no, we pulled Dr. Xu to claim to give medical opinions. That's not a medical opinion on there. She wasn't giving medical opinions. They didn't need a medical opinion at that point. They knew she couldn't work in cold environments. This was just part of their plan to stop her at every, they go very vague, and then they go very detailed on there and say, well, we've locked you into this sanitarian, and now we're going to determine sanitarians only work in normal conditions, not in cold, on there. And they used this medical expert to make this conclusion that's not a medical opinion. The reliance on the court's use of the DOT, I think the court can take judicial notice. They cite the court's case, and I think it's Robinson, where reliance did not put forward the DOT, did not inform the plaintiff when they denied the claim that they were using DOT and did not put it in the administrative record at that point on there, and the court said that was improper. But this is a different situation where reliance did put it in the record. We know they're using the DOT, and I think the court can take judicial notice about the DOT definition of titles on there. And to really determine primarily, I think it really highlights that the sanitarian definition is not reasonable on there. I know the court used two or three definitions to merge them, and maybe that can be reasonable. But in that situation, the court found that by merging those three, that the plaintiff could not perform the job on there. But I think it would be great if the Fifth Circuit could clarify that issue a little more about these DOTs, because what the insurance companies are doing is they're getting these and jumping to the DOT first, not looking at the national economy of where these jobs are performed, because this court has said, well, you can use some DOTs. But it's clarified if the job is not performed particularly in the national economy and we can't look at every job requirement that's outside of the particular job description on there and expect the insurance companies to do that. But I think insurance companies should be cautioned not to use the DOT as just an initial reaction on there, to deny benefits on there. They need to look at these jobs in the national economy. Just an example, Fifth Circuit judges, you look at this. If this was the insurance company looking at a Fifth Circuit judge, well, your position is not in the DOT on there. Maybe you fall under a secretary somewhere for reliance because you take some notes on there. They follow just one criteria, and they get to classify you as a secretary. That's essentially what a reliance is doing on there. They're not acting in good faith. They're manipulating the system as best they can, and you can particularly see it between the rehabilitation expert and Dr. Zhu in that situation where they went very broad and then very specific to say, well, this can only work in normal working conditions. I'll pause it. And I think that's my — I'd love to answer any questions you have. I don't think I have 20 minutes to talk on there. But does the Court have any questions? Roberts. All right. Thank you, Mr. Norris. Thank you. McGrath, you save time for rebuttal. The counsel said that House was different. And factually, it is. We're dealing with a lawyer versus a sanitarian. But what's important is the holding in House. And what the Court said in House was, we do not believe that the law precludes an interpretation, that interpretation here meaning the plans. It said House's regular occupation was an attorney not restricted to his own specific job as a litigation attorney with uniquely stressful practice. That's the holding. And the Court's decision in the district court here is contrary to it. Next, when you address the amount of time that the claimant had to be in the cold, that's nowhere in the record. In fact, PICO's job description doesn't even explain that it involved any time in the cold. Counsel said it was 80 percent. That's not in the record. There is no evidence in the administrative record on the amount of time she had to spend in the cold. Remember, she's not in the processing plant all the time because that's not her job. She had an office job for part of it. She had to instruct other people on food safety. She had to review incoming regulations on food safety. So counsel put out a number that is not in the record and is not supported. Counsel also referred to the DOT, and he says it's outdated, and he said you shouldn't rely on it. Well, that's not what Pylant says, and Pylant is the law of this circuit. And he's asking you to overrule House. He's asking you to overrule Pylant. And this Court can't do that. And it shouldn't do that because, especially in this case, there is zero contrary evidence. He's telling you you shouldn't rely on the DOT that the defendant used. And it's inaccurate. It's unreasonable. It's not. It matches up, as I said, with the duties that were identified by her own employer. But counsel has waived any argument against the DOT because there is no contrary evidence in the administrative record in this case. I honestly do not understand counsel's arguments regarding Dr. Xu. Dr. Xu was asked, does she have Raynaud's, and does that mean she should not work in the cold? And Dr. Xu said yes. That is a medical opinion. The problem is, even with that medical opinion, it doesn't mean she qualifies for benefits under the terms of this policy. She doesn't. So for him to say that a medical doctor provided a vocational review, that is entirely inaccurate. Again, counsel is asking you to toss out the window House and how it defines a regular occupation. He's asking you to ignore the definition in this policy. He's asking you to rely on post hoc arguments. And in Shadler, this Court held you can't do that. If it's not in the administrative record, it can't be considered. In fact, the definition in this policy was regular occupation, which is the same thing as in House. But in cases such as Birch and Robinson, it said own occupation instead of regular occupation. Is that right? That is correct. But to be honest, courts have said there's no significant difference between the two. They said if anything, and by saying own occupation, it kind of links it closer to your own job than regular, which denotes something that is broader. So if anything, the fact that we say regular, not only is it in House, but it denotes, again, something much more broader. So if you look at the district court's vocational analysis, it's contrary to so many decisions of this court. Its conflict of interest analysis, which overwhelmed its decision, is contrary to decisions from this court. It is erroneous, and we therefore ask that this court reverse. Thank you, Your Honors. Thank you, Mr. Blackrock. Your case is under submission.